Stevens v. Johnson

No error.

Judges CLARK and WHICHARD concur.

STANLEY G. STEVENS, JR., BY AND THROUGH HIS GUARDIAN AD LITEM, MARY ANN KINARD v. KENNETH L. JOHNSON, EXECUTOR OF THE ESTATE OF STANLEY G. STEVENS, SR.

No. 8010SC573

(Filed 3 February 1981)

**Attorneys at Law § 3.1— extent of attorney's authority to bind client**

    In matters of substance not involving procedure where no action has been commenced by the filing of a complaint, the client's substantive rights, unless expressly waived, are protected so that an attorney must secure express authority from the client before taking action which would affect the client's substantive rights; therefore, in an action to enforce an oral contract for child support which had been negotiated by the attorneys for the mother and father, the trial court properly granted judgment n.o.v. for the executor of the estate of the father, since no civil action for child support was ever commenced; there was no evidence that the father gave his attorney express authority to bind him to additional terms proposed by the mother's attorney; the father's attorney testified that he discussed the additional terms with the father, and the father did not accept them; and the father never gave any authority for settlement beyond that contained in the original letter from his attorney to the mother's attorney.

    Judge WELLS concurs in the result.

APPEAL by plaintiff from *Hobgood (Hamilton H.), Judge.* Judgment entered 21 November 1979 in Superior Court, WAKE County. Heard in the Court of Appeals 8 January 1981.

This is an action to enforce an oral contract for child support. Mary Ann Kinard married Stanley G. Stevens, Sr., on 4 April 1964. Eight months later, Stanley G. Stevens, Jr., was born. Mary Ann and Stanley G. Stevens, Sr., were divorced absolutely on 17 August 1967.

Stevens, Sr., did not provide any support for his son during the first eight years of the boy's life. Kinard alleges, however, that after that time an oral agreement for the support of the boy was reached with Stevens, Sr., through negotiations between their respective attorneys. The purported agreement was never signed, but Stevens, Sr., did subsequently pay Kinard the sum of $150.00 per month

and maintained a hospital insurance policy on the child until his death.

Kinard contends the defendant agreed to provide such support until the child reached the age of 18 years and, in addition, agreed to purchase a life insurance policy in the sum of $10,000 with Stanley, Jr., as beneficiary. Plaintiff further alleges that she spoke to her husband twice about the life insurance policy and he assured her that everything was taken care of. Defendant's executor refused, however, to make support payments after the death of Stanley Stevens, Sr., and no life insurance policy with Stanley Stevens, Jr., as beneficiary was found after Stevens, Sr.'s death.

The jury verdict established that Stevens, Sr., agreed to take out the life insurance policy but did not agree to make support payments beyond death. The court granted defendant's motion for judgment n.o.v. Plaintiff appealed.

*Thompson & McAllaster, by Sharon A. Thompson, for plaintiff appellant.*

*Everett, Creech, Hancock & Herzig, by William A. Creech, for defendant appellee.*

HILL, Judge.

In order to determine whether the trial court erred in granting the defendant's motion for judgment notwithstanding the verdict, we must determine the authority of an attorney at law to bind his client.

The record in this case reveals that Kinard swore out a warrant against her former husband seeking support for the child born of the marriage. Stevens, Sr., obtained the services of an attorney, Mr. Edward Hollowell, and on 24 October 1973, Hollowell wrote a letter to Kinard's attorney, Ms. Deborah Greenblatt (nee Mailman), stating that he had reviewed with Mr. Stevens his obligation to support his son and that Stevens was prepared to make the following agreement:

(1) Mr. Stevens will pay the sum of $150.00 per month support for said son.

(2) Mr. Stevens would pay Ms. Mailman's fee in a reasonable amount.

(3) Mr. Stevens would claim his son for income tax purposes.

(4) An orderly visitation schedule will be worked out.

(5) The nonsupport charges will be dismissed and this letter will serve as a memorandum of understanding and agreement.

Ms. Mailman testified that after receiving the letter she telephoned Mr. Hollowell and advised him that Kinard wanted three additional provisions added to those submitted: (1) life insurance in the sum of $10,000 with their son as beneficiary; (2) medical insurance for the boy; and (3) an escalator clause on the monthly support provision. Ms. Mailman further testified that Mr. Hollowell told her the life insurance and medical insurance were not any problem; that he did not have to consult with his client about them; and that he (Hollowell) would agree to them as obligations of the defendant.

Mr. Hollowell testified that he received a copy of the three additional proposals prepared by Ms. Mailman on 27 December 1973. Mr. Hollowell stated that he discussed the additional proposals with Stevens, Sr., but that Stevens did not accept them. Hollowell testified that he then advised his client to abide by the terms of his October 1973 letter; that to the best of his knowledge Stevens did so; and that Stevens, Sr., never agreed to anything other than what was outlined in the letter of 24 October 1973.

No separation agreement was ever signed. Stevens did, however, pay $150.00 support money monthly and acquired a medical insurance policy for his son. The criminal warrant sworn out before the attorneys' negotiations was dropped.

Appellant Kinard contends there is a presumption in North Carolina in favor of an attorney's authority to act for the client he professes to represent. *Bank v. Penland*, 206 N.C. 323, 173 S.E. 345 (1934); *Alexander v. Board of Education*, 6 N.C. App. 92, 169 S.E.2d 549 (1969). Appellant argues that this presumption arises not only in regard to the technical or procedural aspects of a case but extends as well to the area of the client's substantive rights. *Greenhill v. Crabtree*, 45 N.C. App. 49, 262 S.E.2d 315, *disc. review allowed* 300 N.C. 196 (1980).

We note, however, that the cases cited by appellant deal with

actions taken by attorneys after complaint has been filed. For example, in *Greenhill, supra*, plaintiff's attorney filed a notice of voluntary dismissal pursuant to Rule 41(a) after plaintiff had previously taken a dismissal pursuant to Rule 41(a)(1) in another, but identical, action. Subsequent to the second notice of dismissal, plaintiff, employing different counsel, filed a motion pursuant to Rules 60(b)(4) and (6) to set aside the second notice of dismissal charging that the attorney had no express or implied authority from plaintiff to file the notice. This Court held that the dismissal affected plaintiff's substantive rights, but that plaintiff had not rebutted the presumption that plaintiff's attorney had the authority to act for his client.

Although the *Greenhill* court held that the presumption of an attorney's authority extends to substantive matters, we note that the dismissal made by the attorney in that case involved the management of the *procedure* of the case—an area in which the attorney is skilled and trained far more so than the client. Hence, the judgment of the attorney in such cases ought to be given more weight.

In the case *sub judice* no civil action for support was ever commenced. *See* G. S. 1A-1, Rule 3. We hold that in such matters of substance, not involving procedure, where no action has been commenced by the filing of a complaint, that the client's substantive rights—unless waived expressly—must be protected so that an attorney must secure express authority from the client before taking action which would affect the client's substantive rights.

We find no evidence in the record of Stevens having given Hollowell express authority to bind him to the additional terms proposed by Ms. Mailman. In fact, Hollowell testified that he discussed the additional terms with Stevens, and Stevens did not accept them. This testimony is not disputed.

We find that Stevens never gave any authority for settlement beyond that contained in the letter of 24 October 1973. Neither did he ratify the proposed agreement by acquiring medical insurance on the child.

In granting the judgment n.o.v., the trial judge committed

No error.

Judge ARNOLD concurs.

Judge WELLS concurs in the result.